**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MEE INDUSTRIES,**

                **Plaintiff,**

**-vs-**                                          **Case No. 6:05-cv-1520-Orl-31DAB**

**DOW CHEMICAL COMPANY,**

                **Defendant.**

_____

## ORDER

This matter comes before the Court on the Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial (Doc. 211) filed by the Defendant, Dow Chemical Company ("Dow"), the response (Doc. 214) filed by the Plaintiff, Mee Industries ("Mee"), and sur-replies (Doc. 217, 221) filed by both parties.

**I.  Background**

In the instant case, Mee sued Dow for malicious prosecution. In the underlying action, *Dow Chemical Company v. Mee Industries*, Case No. 6:00-cv-437-ORL-31DAB (the "Patent Case"), Dow sued Mee and Florida Power Corporation ("Florida Power"), contending that water misting systems sold by Mee to Florida Power (and others) were being used to infringe two Dow patents: U.S. Patent No. 5,930,990 (the "'990 Patent") and U.S. Patent No. 5,867,977 (the "'977 Patent"). The patents were directed to increasing the power output of gas turbines. Both involved methods for adding water to a turbine's air stream in large-enough quantities that at least some

water would not evaporate before entering the compressor, creating an effect known as "wet compression."

After extensive litigation, including a six-day bench trial before the undersigned and an appeal to the United States Court of Appeals for the Federal Circuit, Mee and Florida Power prevailed. The majority of the patent claims asserted by Dow were found to be invalid. As to the remainder, Mee was found not to have infringed them, or contributed to (or induced) infringement of them by others.[1]

Mee filed this malicious prosecution action in 2005, contending that Dow lacked probable cause or legal justification for bringing the Patent Case. The action proceeded to trial before a jury. At the close of all the evidence, Dow moved for judgment as a matter of law, which was denied. The jury found in favor of Mee, concluding that Dow had instituted the Patent Case without probable cause and had not relied on advice of counsel in doing so. (Doc. 184 at 1-2). Dow now renews its request for judgment as a matter of law. In the alternative, Dow seeks a new trial.

**II.     Legal Standards**

   A.     <u>Judgment as a Matter of Law</u>

Rule 50(a) of the Federal Rules of Civil Procedure provides that, if a party has been fully heard on an issue and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party and grant a motion for judgment as a matter of law against the party on a claim or defense

---

[1] Florida Power was also found not to have infringed the patents.

that requires a favorable finding on the issue. Rule 50(b) provides in pertinent part that if the court does not grant a party's Rule 50(a) motion, it is considered to have submitted the action to the jury subject to the court's later deciding it, and the movant is permitted to renew the motion within 10 days after the entry of judgment.

In considering a defendant's renewed motion for judgment as a matter of law, the court should review all of the evidence in the record; in doing so, however, the court is required to draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S.133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 205 (2000). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151, 120 S.Ct. at 2110. Even though the trial judge might have reached a different conclusion had he been the trier of fact, he is not free to reweigh the evidence or to re-evaluate credibility of witnesses. *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995).

  B. New Trial

A renewed motion for judgment as a matter of law may be joined, in the alternative, with a motion for a new trial under Rule 59. Fed.R.Civ.P. 50(b). Rule 59(a)(1) provides that after a jury trial a new trial may be granted to all or any of the parties on all or part of the issues "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

A movant is entitled to a new trial under Rule 59 when the verdict is against the great, not merely the greater, weight of the evidence. *Williams v. City of Valdosta*, 689 F.2d 965, 973 (11th

Cir. 1982). To make this determination, the trial judge must independently weigh the evidence favoring the jury verdict against the evidence in favor of the moving party. *Id.* (citing *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982)). A trial judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury. *Williams* at 973 n.7 (11th Cir. 1982). In cases involving simple issues, highly disputed facts, and an absence of "pernicious occurrences," the Court has less freedom to disturb a jury verdict than it does in cases involving complex issues, facts not highly disputed, and events arguably marred by error. *Id.* (citing, among others, *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362 (5th Cir. 1980)).

  C. <u>Malicious Prosecution</u>

To prevail in a malicious prosecution action under Florida law, a plaintiff must establish that:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Alamo Rent-A-Car v. Mancusi,* 632 So. 2d 1352, 1355 (Fla. 1994). "[T]he failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution." *Id.*

**III.   Analysis**

    A.    <u>Motion for Judgment as a Matter of Law</u>

It is undisputed that the first three elements of a malicious prosecution action were met in this case: A civil proceeding (i.e., the Patent Case) was commenced against Mee, Dow was the legal cause of that proceeding, and Mee prevailed. And, at least for purposes of this motion, Dow does not challenge the jury's finding as to malice. Finally, Dow stipulated prior to trial that Mee suffered damages, in the form of attorney's fees, in defending the Patent Case. Therefore, to establish its entitlement to judgment on the malicious prosecution claim, Dow must demonstrate that no reasonable jury could have found that it lacked probable cause to institute the Patent Case. In the alternative, Dow argues that no reasonable jury could have found against it on the advice-of-counsel affirmative defense it asserted at trial.

        1.    <u>Probable Cause</u>

Under Florida law, probable cause for instituting suit is defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Goldstein v. Sabella*, 88 So. 2d 910, 911 (Fla. 1956) (citing *Dunnavant v. State*, 46 So. 2d 871, 874 (Fla. 1950)). Probable cause is measured by a lesser standard in the context of a civil suit than it is in a criminal suit. *Wright v. Yurko*, 446 So. 2d 1162, 1166 (Fla. 5th DCA 1984). "To establish probable cause, it is not necessary to show that the instigator of a lawsuit was certain of the outcome of the proceeding, but rather that he had a reasonable belief, based on facts and circumstances known to him, in the validity of the claim."

In the Patent Case, Mee eventually prevailed on two different bases:  Some claims were found to be invalid.  As to the others, the Court found that Dow had not produced evidence of direct infringement by Mee or Florida Power, or of contributory infringement or inducement of infringement by Mee.  In the instant proceedings, Mee has not argued that Dow lacked probable cause to file the Patent Case because it knew or should have known its claims were invalid.  For purposes of this motion, the probable cause issue turns on whether Dow had a reasonable belief, based on the facts and circumstances known to it at the time of filing, that its patents were being infringed.

Dow argues that the evidence at trial so overwhelmingly favored it on this point that no reasonable jury could have found against it.  Dow points to four items: (1) the fact that it obtained legal opinions from in-house and outside attorneys prior to filing; (2) the fact that its internal Litigation Review Committee ("LRC") vetted the proposed suit before it was filed; (3) evidence that allegedly showed that Mee believed it might be infringing; and (4) some decisions made by this Court in the Patent Case that, in Dow's view, support a finding that it possessed probable cause to bring suit.  (Doc. 211 at 8).

Tellingly, the first two items Dow cites as "evidence" are not evidence at all.  Rather, they are conclusions reached by individuals on Dow's payroll – *i.e.*, in-house and outside counsel, and the members of the LRC – that probable cause to bring suit existed.[2]  And the Patent Case

---

[2]In its memorandum, Dow cites to trial testimony from some of these individuals as to the research underlying their conclusions, such as the places they visited and the documents they reviewed. (Doc. 211 at 9-10).  However, Dow never describes any particular *evidence* – such as, for example, facts discovered on those visits or in those documents –  that could reasonably have been relied upon to support a belief that Mee's systems were being used to infringe Dow's patents.

decisions upon which Dow seeks to rely – denials of multiple motions for summary judgment and a motion for attorney's fees – are also of no assistance to Dow here.

It is true that, for purposes of a malicious prosecution case, a court's decisions in an underlying case may sometimes indicate that the original plaintiff possessed probable cause. *See*, *e.g.*, *Yurko*, 446 So. 2d at 1167. However, Dow makes no showing that this principle is applicable here. Dow never even attempts to identify the issues that were addressed on summary judgment in the underlying case or how those issues might be relevant to the question of infringement. The Court's *sua sponte* review of those summary judgment motions suggests that they had no such relevance. For example, one of them addressed the issue of whether Dow's patents met the "best mode" and "enablement" requirements of 35 U.S.C. § 112, while another was concerned with the issue of whether Dow had engaged in inequitable conduct while prosecuting its patent applications. (Doc. 120, Doc. 96 in Case No. 6:00-cv-437-GAP). Neither of these motions had implications as to the issue of infringement. In addition, the differing burdens of proof in the Patent Case and in this action[3] undercut the notion that decisions from the first case are dispositive or strongly suggestive of the proper result here.

This leaves the evidence that allegedly indicates that Mee thought it was infringing Dow's patents. According to Dow, this evidence consisted of the following three items: the fact that Mee attempted to obtain an exclusive license from Dow, the fact that Mee's counsel proposed ways that Mee could "avoid" Dow's claims, and the fact that Thomas Mee wrote to his lawyer that "we are

---

[3]As an example, as noted in this Court's order of January 10, 2008, malicious prosecution is a state tort requiring proof of malice by a preponderance of the evidence. In contrast, patent law requires clear and convincing evidence that a case was so exceptional as to qualify for an award of attorney's fees pursuant to 35 U.S.C. § 285. (Doc. 100 at 5-6).

going to have to face the Dow patent issue sometime soon ... [e]ven if we only negotiate favorable terms for a license." (Doc. 211 at 10). Even if Dow had been aware of these items prior to filing – which does not appear to be the case as to the second and third – they certainly do not establish a belief on Mee's part that it was infringing. Any prudent (and non-infringing) business owner in Mee's position – accused of infringement by a competitor with effectively bottomless pockets, faced with the prospect of spending a million dollars or more to successfully defend an infringement suit – would likely explore the possibility of making the problem go away more economically by securing a license. And advice from a lawyer as to how one might abide by the law is hardly proof that one is currently violating the law.

It is not even clear that these three items (and the inferences that could reasonably be drawn from them) *could* constitute "circumstances sufficiently strong in themselves to warrant a cautious man in the belief" that Mee Industries was infringing. But they clearly are not such strong evidence as to *compel* a finding in Dow's favor on this point. The jury was simply not required to accept the inferences that Dow seeks to have drawn from these three items.

Ample evidence supports the jury's conclusion on the issue of probable cause. First, it should be noted that Dow's claimed invention involved the addition of nebulized water to the compressor of a combustion turbine – *i.e.*, wet compression – in increments and in such a manner as to avoid certain harmful results (destructive thermal stresses in one patent, deformation of the angular housing in the other). Incremental wet compression itself was admittedly prior art and not patentable by Dow.[4] Thus, for Mee to be liable for inducing or contributing to infringement of

---

[4] Indeed, as discussed below, Dow's applications for such a patent were rejected by the USPTO.

these method patents, Dow needed to show that at least one of Mee's customers was actually doing something more than just incremental wet compression.

Prior to the filing of the Patent Case, Mee provided Dow with a list of its customer installations. (Doc. 193 at 9). But Dow made no effort to ascertain whether any of these customers actually used Mee's equipment in a manner that would infringe the patents. Rather, Dow simply had Steve Jasper, one of its engineers, calculate that under certain temperature and humidity conditions, Mee's customers could be using the equipment to accomplish wet compression. (Pl. Exh. 277). But this misses the mark. Even if Mee's customers were using the equipment for wet compression, that was old technology and unpatentable. Jasper, among others, admitted as much at trial. (Doc. 193 at 16-17). In its research prior to filing the Patent Case, and indeed throughout the trial in that case, Dow never produced any evidence that the limitations of the claims at issue had been met by the use of any of Mee's equipment. And this fact is more than sufficient to support the jury's verdict on this point.

The Court finds no error in the jury's determination that Dow lacked probable cause to bring the Patent Case.[5]

---

[5] Dow also argues that the question of probable cause is a legal issue to be decided by the judge and that the Court erred by submitting it to the jury. However, Dow waived this issue by failing to object to the jury instructions and verdict form. Fed.R.Civ.P. 51(d)(1)(A). The Court also notes that Dow has not identified any particular factual issues that should have been resolved by the jury so that the Court could resolve the legal issue of probable cause. Moreover, to the extent that the issue should have been resolved by the Court, rather than the jury, the undersigned would have reached the same conclusion.

### 2. Advice of counsel

Generally speaking, good-faith reliance on the advice of counsel in instituting a criminal or civil action is a complete defense to a subsequent action for malicious prosecution. *Duval Jewelry Co. v. Smith*, 136 So. 878, 880 (Fla. 1931). The fact that the attorney's advice was unsound or erroneous will not affect the result. *Id.*

> The advice of counsel cannot be sought or secured as a shield from a feigned action for malicious prosecution or as a cloak to hide malice, but it must be sought in good faith, with the sole purpose of being advised as to the law. The advice of counsel must be predicated on a full, correct, and fair statement of all material facts bearing on the guilt of the accused, the specific proceeding complained of must have been advised by counsel, and the advice must have been acted upon in good faith under the belief that the charge was true.

*Id.*

The jury in this case was asked whether, "[b]efore filing the patent infringement case against Mee, Dow in good faith sought the advice of a lawyer, gave the lawyer a full, correct, and fair statement of what it knew, and reasonably relied on the lawyer's advice in filing the case." (Doc. 184 at 2). The jury answered in the negative. (Doc. 184 at 2). Dow contends that the record at trial admitted only one conclusion: that the jury was wrong, and that Dow relied in good faith on the advice of counsel in bringing the Patent Case.

It is undisputed that Dow consulted an outside attorney – William Schramm ("Schramm") – who provided an opinion letter in which he opined that Dow's patents were valid and being infringed.[6] Schramm eventually filed and litigated the Patent Case on Dow's behalf. However,

---

[6]In support of the advice-of-counsel defense, Dow also points to similar opinions rendered by its in-house counsel before Schramm's opinion was sought. However, contrary to Dow's representations, the law is not clear that a corporation or similar entity can rely on its own employees to establish an advice of counsel defense. The one Florida case cited by Dow for this proposition –

after a careful review of the record, the Court finds no error in the jury's determination that Dow is not entitled to judgment in its favor on its advice-of-counsel defense. As Dow puts it in its brief, "the proper inquiry here is whether Dow chose Schramm in good faith and whether it had reason to believe that the advice of the lawyers, including Schramm, was unsound." (Doc 211 at 17). Based on the evidence presented at trial, the jury could have reasonably concluded that Dow had reason to believe its lawyers' advice was not sound.

---

*Toomey v. Tolin*, 311 So. 2d 678 (Fla. 5th DCA 1975) – involves a police department with a separate legal department, somewhat different than the situation at a business that employs numerous patent attorneys and is deciding whether to sue a competitor. More importantly, the *Toomey* court never addressed the issue of whether in-house counsel could properly be relied on to establish an advice-of-counsel defense, because no one raised it. Rather, the court was called on to decide whether advice of counsel could provide a defense to a false arrest claim, as opposed to its more traditional application to a malicious prosecution claim. *Id.* at 680. The fact that the advice had been provided by police department counsel rather than an outside attorney never came up.

The second case relied on by Dow, *Western Elec. Co. v. Stewart-Warner Corp.*, 631 F.2d 333 (4th Cir. 1980), was a patent case, not a malicious prosecution case. In *Stewart-Warner*, the court had to assess whether an infringer's reliance on its in-house counsel's advice in raising certain defenses was so absurd as to warrant increased damages and an award of attorney's fees. Obviously, this is entirely different from the question of whether such advice can itself establish a defense to the tort of malicious prosecution.

In the final case cited by Dow, *Shea v. Chase Manhattan Bank, N.A.*, 781 A.2d 352 (Conn. App. 2001), the defendant bank relied on both in-house counsel and outside counsel in deciding to bring the underlying suit. As such, the *Shea* court had no need to decide whether reliance on the advice of in-house counsel, alone, would be enough to establish the defense.

In addition to the shortcomings in the precedent it cites, Dow has not pointed to anything in the opinions offered by its in-house attorneys that would make them more useful or reliable than Schramm's opinion in establishing its defense. Dow has not shown that the opinions of its in-house counsel were based on any information unknown to Schramm, or that the in-house counsel reached a conclusion materially different than that reached by Schramm. The testimony at trial was that the opinions of Dow's in-house counsel were at most the starting points for Schramm's opinion, and that Schramm's opinion was the product of the most extensive research. As such, in determining whether Dow is entitled to judgment on its advice of counsel defense, the Court will not consider the advice offered by Dow's in-house counsel.

Dow's William Miller ("Miller"), an experienced patent attorney, had shepherded the applications through the Patent Office that resulted in the issuance of the '930 Patent and the '977 Patent. Miller, who served as the "point man" at Dow for prosecution of the patent applications, had been involved in the initial drafting of the claims and the filing of the applications, and had "lived and breathed" with the claims for "quite some period of time." As a result, he was "intimately familiar with the language of the claims." (Doc. 195 at 67). He knew that, in prosecuting the '930 Patent and the '977 Patent, Dow had repeatedly tried to claim a method for performing wet compression by way of an incremental addition of water, with no further limitations, and he knew that the patent examiners had refused to allow the claim on the grounds that this method (henceforth, "incremental wet compression") had been disclosed in prior art. (Doc. 194 at 92-107). Miller was therefore aware that incremental wet compression alone would not infringe the Dow Patents, and that something more was required. (Doc. 195 at 83).

Miller (and through him, Dow) knew that Mee's equipment could be used in ways that did not infringe its patents. For example, it could be used for evaporative cooling, in which all of the added water is evaporated prior to its being drawn into the compressor. (As noted above, "wet compression" occurs when unevaporated water enters the compressor.) Miller knew that when Dow first contacted Schramm, the company had no evidence that Mee or its customers were performing anything more than incremental wet compression. (In fact, a fair reading of the solicitation letter from Miller at least arguably suggests that the company wanted Schramm's opinion as to the validity of its patents, only, not their possible infringement by Mee.) Miller was aware that Dow had not attempted to obtain this evidence by such means as, for example, contacting any of Mee's customers (using the list that Mee had provided) to inquire as to the

methods they were employing when using Mee's equipment.[7] And Miller knew that Schramm did not obtain any evidence that Mee or its customers were engaging in something more than incremental wet compression.

In his opinion letter, Schramm opined that "at least claim 30 of the '990 Patent[8] is infringed," based solely on two things: that the Mee sprayer-control system "accounts for numerous ambient conditions" and that "Mee has numerous fog systems installed nationwide." Together these two things suggested to Schramm "that the method of adding water to the compressor in increments does not cause any significant thermal stresses to the system." (Pl Exh. 117). However, suggesting that the additional water does not *cause* thermal stresses is a far cry from suggesting that the water was added for the *purpose* of avoiding thermal stresses, as claim 30 required. The evidence showed that the water could be incrementally increased for other purposes, such as to maintain complete evaporation for evaporative cooling in the face of changing humidity and temperature conditions outside the turbine. Or the total volume of water added (in increments

---

[7]Dow did, on the other hand, employ the list for another purpose. Shortly after filing the Patent Case, Dow sent letters to Mee's customers, warning them that they themselves might face an infringement suit for using Mee's equipment – despite a lack of evidence that any of these customers were performing Dow's patented methods. (Doc. 194 at 57-60; Doc. 195 at 84-85).

[8]Claim 30 of U.S. Patent No. 5,930,990 read as follows:

A wet compression power augmentation method for adding nebulized water to a gas turbine, said gas turbine having a housing and a compressor, said compressor having a compressor inlet, comprising:

nebulizing water in said compressor inlet; and

adding water to modify said nebulized water in a plurality of nebulized water mass flow increments such that operationally-induced thermal stresses within said gas turbine due to the ingestion and evaporation in whole or in part of said nebulized water are sufficiently minimized to preserve structural integrity in said gas turbine.

or otherwise) might be small enough so that wet compression was accomplished with no possibility of creating such problems as destructive thermal stresses, mooting any possibility that the water was being added incrementally for the *purpose* of avoiding such problems.

Schramm's infringement opinion as to claim 5 of the '977 Patent[9] was similarly lacking. The claimed method required operation for a certain minimum time period – "about 4 hours" – and with a sufficiently uniform distribution of the water to limit angular deformation of the housing. In his opinion letter Schramm relied on evidence that the Mee system produced uniform distribution of water and did not cause angular deformation of the housing, but pointed to nothing that suggested that it was being done *for this purpose*.  (Pl Exh. 117).

There was evidence produced at trial that Dow considered Mee a competitor that should either be forced to ether pay Dow for a license or get out of the market for power augmentation technology.  (Doc. 194 at 50; Doc. 195 at 70).  At least arguably, Dow took several steps primarily

---

[9]Claim 5 of U.S. Patent No. 5,867,977 read as follows:

A method for augmenting the net output of an industrial gas turbine characterized in operation by periods of continuous use exceeding about 4 hours in length in driving a generator or compressor, the industrial gas turbine having an axial-flow multistage compressor having an inlet for acquiring a working fluid comprising air, said axial-flow multistage compressor having a housing, the method comprising the steps of:

providing liquid water comprising liquid droplets to the working fluid acquired by the axial-flow compressor to reduce the temperature increase of the working fluid caused by compression to achieve an increase in the net output of the industrial gas turbine available to drive said generator or compressor as measured against the net output of the industrial gas turbine under comparable conditions but without liquid water provided,

said method including the further step of insuring a sufficiently uniform distribution of liquid water in the working fluid to limit angular deformation of the housing to a generally predetermined acceptable limit that prevents damage to the axial-flow multistage compressor.

if not entirely for the purpose of causing financial harm to Mee.  For example, Dow chose to sue the California-based Mee in Florida, rather than in one of numerous other states in which Mee had customers – and with absolutely no evidence that Florida Power was even using Mee's equipment for wet compression.  (When asked why Dow chose to sue in what appeared to be the most expensive possible forum for Mee, Dow's witnesses were unable to articulate a compelling reason.)  Dow also sent warning letters to the rest of Mee's customers after filing the Patent Suit, informing them that they might face an infringement suit for using Mee's equipment.  (Doc. 194 at 57-60; Doc. 195 at 84-85).  Obviously, the jury was free to accept Dow's explanations that these were entirely legitimate steps, done with no ulterior motive.  However, the jury could also have interpreted them as tactics employed for the purpose of ratcheting up the economic pressure on Dow's much smaller competitor so as to force it out of the power augmentation market, regardless of whether any infringement was occurring.

A reasonable jury, combining the evidence suggesting Dow's commercial motivations with Miller's knowledge that the company never possessed (and Schramm never acquired) any evidence of infringement, could have concluded that Dow knew that Schramm's advice was unsound, but did not care.  As such, the jury could properly have rejected Dow's advice-of-counsel defense.

    B.    <u>New Trial</u>

Dow argues that if the probable cause and advice-of-counsel issues raised above are not enough to warrant judgment as a matter of law, they meet the lesser standard required to obtain a new trial.  After reviewing the record, the Court does not find that those issues were decided against the great weight of the evidence or otherwise require a new trial.

Dow also argues that a new trial is required because the closing remarks by counsel for Mee were inappropriately inflammatory, referring to Dow as an "800-pound gorilla" out to crush an annoying "cockroach".  The Court disagrees, particularly in light of the fact that the Mee-as-cockroach reference came from one of Dow's internal emails.  Dow also complains of certain alleged misstatements of the law made by counsel for Mee in closing, but the Court finds that the statements were neither erroneous nor prejudicial.  In addition, Dow did not make a timely objection to these statements, and the Court's instructions clearly admonished the jurors that what the lawyers say is not evidence (Doc. 178 at 4) and that the applicable law would be explained by the Court (Doc. 178 at 2-3).

In consideration of the foregoing, it is hereby

**ORDERED** that the Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial (Doc. 211) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 31, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party